UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MILLS PENINSULA HEALTH
SERVICES, *et al.*,

    *Plaintiffs*,

v.

DOROTHY A. FINK,

    *Defendant*.

Civil Action No. 23-2328 (LLA)

## MEMORANDUM OPINION

Mills Peninsula Health Services and seven other Medicare and Medicaid service providers (the "Providers") bring this action against Acting Secretary of Health and Human Services Dorothy A. Fink.[1] ECF No. 1. The Providers assert that the Department of Health and Human Services ("HHS") acted arbitrarily and capriciously when its Provider Reimbursement Review Board ("Board") dismissed two of their appeals seeking payment for rendered services. *Id.* ¶¶ 22-25. The parties have filed cross-motions for summary judgment. ECF Nos. 11, 12. For the reasons explained below, the court will deny the Providers' Motion for Summary Judgment and will grant the Acting Secretary's Cross-Motion for Summary Judgment.

---

[1] Although the Providers named former Secretary of Health and Human Services Xavier Becerra as the defendant in their complaint, Acting Secretary Dorothy A. Fink "is automatically substituted as a party" in his place pursuant to Federal Rule of Civil Procedure 25(d).

## I.     FACTUAL BACKGROUND

### A.     The Medicare and Medicaid Program Structure and Reimbursement Process

The Medicare statute, 42 U.S.C. § 1395 *et seq.*, covers certain medical care costs for eligible aged and disabled persons. The Centers for Medicare and Medicaid Services Division ("CMS") within HHS administers the program. Relevant here, Medicare Part A covers acute care in hospitals like the Providers. The Medicaid statute, 42 U.S.C. § 1396 *et seq.*, on the other hand, finances medical care for low-income individuals, regardless of age. States that participate in Medicaid are entitled to have a percentage of their Medicaid-related expenses matched by the federal government. *Id.* §§ 1396b, 1396d.

CMS contracts with private insurance companies to help manage the operations of the Medicare program. *Id.* §§ 1395u, 1395kk-1. These so-called Medicare Administrative Contractors determine the amount of reimbursement available by reviewing each provider's annual cost report. *See* 42 C.F.R. §§ 413.20, 413.24. The contractor then issues a Notice of Program Reimbursement to the provider. *See id.* § 405.1803. Any providers that are unsatisfied with the amount of reimbursement can appeal to the Board. 42 U.S.C. § 1395oo(a). Board decisions with respect to reimbursement amounts are considered final unless the Secretary chooses to reverse, affirm, or modify the Board's ruling. *Id.* § 1395oo(f); 42 C.F.R. §§ 405.1868(d)(2). If the provider is still dissatisfied at the end of HHS's administrative process, it may seek judicial review within sixty days of the final decision. *See* 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877(b).

### B.     The Board's Procedural Rules

Pursuant to the Medicare statute, the Board is vested with the "full power and authority to make rules and establish procedures, not inconsistent with" the statute or regulations, "which are necessary or appropriate to carry out" its duties. 42 U.S.C. § 1395oo(e). All of the Board's rules

are available online.  "PRRB Rules & Board Orders," Centers for Medicare & Medicaid Services (Sept. 10, 2024), https://perma.cc/F2ZQ-HASG; *see* "Provider Reimbursement Review Board Rules," Centers for Medicare & Medicaid Services (Dec. 15, 2023), https://perma.cc/S29W-Q38Z.

According to the Board's rules, "[i]f a provider fails to meet a filing deadline or other requirement established by the Board in a rule or order, the Board may . . . [d]ismiss the appeal with prejudice" or "[t]ake any other remedial action it considers appropriate." 42 C.F.R. § 405.1868(b).

The Board may also issue orders, which are treated as "addenda to the Rules" and made available online.  Provider Reimbursement Rev. Bd. R. 1.1.  Beginning in November 2021, the Board required all filings to be made electronically via the Office of Hearings Case and Document Management System ("OH CDMS"), "a web-based portal for parties to electronically file and maintain their cases and to correspond with the Board." *Id.* R. 2.1.1.  If a party is unable to transmit a filing through the OH CDMS portal, the party may seek an "exemption to the mandatory electronic filing requirement" by submitting a hard-copy request at least ten days before the filing deadline. *Id.* R. 2.1.2(B).  For time-sensitive requests, parties may "contact the Board at 410-786-2671 and PRRB@cms.hhs.gov." *Id.*  The Board does not accept email communications from providers or their representatives.  *See id.* R. 3.2 ("CAUTION: The Board does *not* accept appeals or other correspondence submitted by email or fax.").

### C. The Providers' Reimbursement Appeals

The Providers are eight hospitals in California that have furnished acute medical care to patients entitled to benefits under both the Medicare and Medicaid programs.  ECF No. 1 ¶¶ 4-12. At some point before July 2012, the Providers submitted payment requests for rendered services to its Medicare Administrative Contractor.  *See* ECF No. 13, at 3-4.  Dissatisfied with the contractor's

3

reimbursement decision, they appealed to the Board in July 2012.[2] *See* ECF No. 1-1, at 3. Shortly thereafter, the Board notified the Providers that "[u]pon full formation of the group appeal[,] you must so advise the Board in writing." ECF No. 11, at 4 (alterations in original). The appeals remained dormant for about a decade because one of the Providers had not been issued a Notice of Program Reimbursement from the contractor—a prerequisite to full group formation. ECF No. 11, at 1.

On three separate occasions, the Board asked the Providers for updates on the group's formation status. First, in October 2014, the Board asked the Providers to notify it within thirty days whether the group was fully formed in both appeals. ECF No. 12-1, at 10. The Providers' representative responded via U.S. mail that the group was not yet complete. *Id.* Second, in May 2020, the Board issued another status request on group formation and warned that a lack of response could result in the appeals' dismissal. *Id.* The Providers did not respond by the specified deadline, but—due to the COVID-19 pandemic—the Board had suspended its deadlines and thus took no action after the original deadline expired. *Id.* Third, on May 12, 2023, the Board informed the Providers in both appeals that "no later than June 11, 2023, you must advise the Board whether this group is fully formed based on the existing group participants" and further explained that "[f]ailure to submit a timely response to th[ese] request[s] will result in the dismissal of the case[s]." J.A. 4, 23. The requests came in the form of two email attachments from "noreply@salesforce.com on behalf of PRRB <prrb_ohcdms@cms.hhs.gov>." *Id.* at 3, 22; *see* ECF No. 16, at 2 (acknowledging that the request came from a "noreply" email address). The email address

---

[2] Upon the Providers' request, the Board divided the group appeal into two parts: one for inpatient services and one for outpatient services (case numbers 12-0452GC and 12-0453GC). ECF No. 12-1, at 9; ECF No. 1 ¶ 15.

4

"prrb_ohcdms@cms.hhs.gov" was listed in the carbon copy, or "cc:," field for both emails. ECF Nos. 1-1, 1-2.

Three days later, on May 15, the Providers' group representative replied to the email and put "prrb_ohcdms@cms.hhs.gov" in the "to" field. ECF No. 1-3. He explained that the group was not fully formed because the Medicare Administrative Contractor had not yet issued a Notice of Program Reimbursement for one of the Providers. *Id.* He further stated that he "was unable to respond to these emails through [OH CDMS,] apparently because the group is not fully formed." *Id.* Finally, he asked the Board to "[p]lease respond to this email to inform me that this response is sufficient or give me further instructions on how to respond." *Id.*

The Board never replied to the representative's email. Then, on June 16, 2023, the Board sent the Providers letters dismissing both appeals. J.A. 2, 21. The letters explained: "[on] May 12, 2023, the Board advised that the Group was required to file a status report regarding the full formation of the group by June 11, 2023. Since the documentation was not submitted to the Board by the due date, the Board hereby dismisses th[ese] case[s]." *Id.*

On June 19, 2023, the Providers asked the Board to reconsider the dismissals and reinstate the appeals, claiming that they had timely responded to the May 12 request by email. ECF No. 11, at 5. As part of the reinstatement request, the Providers included their representative's email as evidence. ECF No. 18, at 2. The Board denied the requests on September 15. *Id.* The bases for its denials are not before the court.

## II.     PROCEDURAL HISTORY

On August 11, 2023, the Providers filed this action seeking judicial review of the Board's dismissal decisions. ECF No. 1. In February 2024, HHS furnished a proposed administrative record. ECF No. 9. The proposed record included the Board's denials of the Providers' reinstatement

5

requests and—as an attachment to those denials—the representative's May 2023 email. *See id.*; ECF No. 15, at 2 ("The original administrative record contained the Provider Representative's May 15, 2023 email, not as a standalone document, but rather as an attachment to a document that was improperly in the administrative record.").

In April 2024, the Providers moved for summary judgment and argued that the Board's reinstatement denials were "improperly in the administrative record" because they contained post-hoc rationalizations for the Board's original dismissals. ECF No. 11, at 16-19. In its cross-motion for summary judgment, HHS agreed to remove the reinstatement denials from the proposed administrative record. ECF No. 12, at 22. But by omitting the reinstatement denials, HHS *also* omitted the representative's May 2023 email that had been attached to the denials. *See* ECF No. 15, at 2. Believing that the email should have remained in the record as a standalone document, the Providers moved to supplement the administrative record and re-add the email in July 2024. ECF No. 15.

In January 2025, this court denied the Providers' motion to supplement, explaining that the Providers could not overcome the "strong presumption . . . that [the agency had] properly designated the administrative record." ECF No. 24, at 10-11 (alterations in original) (quoting *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006)). At most, the Providers could only establish that their representative had *sent* the May 15, 2023 email to the Board; they could not establish that the Board had actually *received* it. *See id.* at 9-10.

Subsequent to the court's ruling, the parties submitted their Joint Appendix.  ECF No. 25.  The cross-motions for summary judgment are now ripe.  ECF Nos. 11, 12, 13, 16, 17, 22, 26, 27, 28, 29, 30.[3]

### III.     LEGAL STANDARDS

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, governs judicial review of Medicare reimbursement disputes.  *See* 42 U.S.C. § 1395oo(f)(1).  Under the APA, a court shall "set aside agency action, findings, and conclusions" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).  This standard requires the court to ensure that the agency "considered the factors relevant to its decision and articulated a rational connection between the facts found and the choice made."  *In re Polar Bear Endangered Species Act Listing & Section 4(d) Rule Litig.*, 709 F.3d 1, 8 (D.C. Cir. 2013) (quoting *Keating v. FERC*, 569 F.3d 427, 433 (D.C. Cir. 2009)).  An agency acts arbitrarily and capriciously if it "relie[s] on factors which Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Id.* (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 997-98 (D.C. Cir. 2008)).

When addressing issues related to how an agency manages its own cases and procedures, courts are generally more deferential.  Because an agency is most familiar with its own "limited resources" and "the most effective structuring and timing of proceedings to resolve . . . competing

---

[3] ECF Nos. 26, 27, 28, 29, and 30 are the parties' summary judgment filings, but with updated Joint Appendix citations.

7

demands," "[a]n agency is allowed to be master of its own house." *Nat. Res. Def. Council, Inc. v. SEC*, 606 F.2d 1031, 1055-56 (D.C. Cir. 1979).

In cases proceeding under the APA, the usual summary judgment standard under Federal Rule of Civil Procedure 56 does not apply "because of the court's limited role in reviewing the administrative record." *Albino v. United States*, 78 F. Supp. 3d 148, 163 (D.D.C. 2015). The court may only review the record "that was before the [agency] at the time [it] made [its] decision." *Am. Wildlands*, 530 F.3d at 1002 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Albino*, 78 F. Supp. 3d at 163 (quoting *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985)). "Summary judgment thus serves as the mechanism for deciding . . . whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.*

## IV.   DISCUSSION

The Providers raise two primary arguments in their motion. First, they claim that the Board's dismissals were arbitrary and capricious "because the Providers complied with [the Board's] request" for information. ECF No. 11, at 8. Second, they argue that it was arbitrary and capricious for the Board to request an update—and subsequently dismiss the appeals due to the Providers' failure to provide one—when the Providers were already under a continuing obligation to keep the Board apprised of any developments. *Id.* at 11-15. The court addresses both arguments in turn.

### A.   Whether the Providers Complied with the Board's Request for Information

The Providers' first argument hinges on the assertion that the Board received and processed the May 15, 2023 email. *See id.* at 9-10. If the Board had been aware of the Providers' response,

8

that fact would play a significant role in the court's arbitrary-and-capricious analysis. But, as mentioned above, *see supra* Part II, and as explained in the court's memorandum opinion and order denying the Providers' motion to supplement, ECF No. 24, the Providers' May 15 email to the Board is not properly before the court. Without the email—or other evidence showing that the Providers updated the Board through the proper channels—there is no basis to conclude that the Providers complied with the Board's request for information.[4]

### B.     Whether the Board's Request for Information was Arbitrary and Capricious

The Providers' second argument operates independently of the first. They claim that, regardless of whether the Board received the requested information, it was arbitrary and capricious for the Board to request an update because the Providers were under an ongoing obligation to inform the Board of any group status changes. ECF No. 11, at 11-13. The court is not persuaded.

As a starting point, the relevant regulations grant HHS and the Board unambiguous authority to "[d]ismiss [an] appeal with prejudice" if a provider "fails to meet a filing deadline or other requirement established by the Board in a rule or order." 42 C.F.R. § 405.1868(b). The Providers do not dispute this authority, nor could they. "Courts have time and again found that the crafting of such procedural rules is well within agency authority and expertise." *Rapid City Reg'l Hosp. v. Sebelius*, 681 F. Supp. 2d 56, 60 (D.D.C. 2010) (collecting cases). Here, the text of the procedural

---

[4] The Providers also argue that it was arbitrary and capricious for the Board to dismiss their appeals for failing to "file a status report" when the Board only asked the Providers to "advise" it of their group status. ECF No. 11, at 10. Put differently, they assert that it was unlawful for the Board to base its dismissal on the format of the update, rather than the update itself. Given the court's ruling on the motion to supplement, this argument fails for the simple reason that *no* update—"status report" or otherwise—is properly in the administrative record. The Board could not have taken issue with the format of the update if it never received the update in the first place.

rules is clear and "mean[s] what [it] say[s]." *Baptist Mem'l Hosp.-Golden Triangle v. Sebelius*, 566 F.3d 226, 227 (D.C. Cir. 2009).

Contrary to the Providers' assertions, it is "completely rational and reasonable for . . . [an] agency[] to impose deadlines[] and . . . interpret them strictly and uniformly." *Lester E. Cox Med. Ctrs. v. Sebelius*, 691 F. Supp. 2d 162, 168 (D.D.C. 2010) (quoting *Rapid City Reg'l Hosp.*, 681 F. Supp. 2d at 61). The Board handles a large volume of appeals, meaning that "[s]uch rules are necessary for the Board to control and efficiently dispose of its substantial docket." *Id.* As long as the Board applies its "claims-processing rules faithfully" to the appeals before it, it does not act arbitrarily or capriciously. *Akron Gen. Med. Ctr. v. Azar*, 414 F. Supp. 3d 73, 81 (D.D.C. 2019).

The Providers argue that, even if the Board may create and enforce rules, it was still irrational for the Board to ask for "information that [it] already knew." ECF No. 11, at 12. But the fact that the Providers question the utility of the Board's request does not render the Board's action irrational. Several cases support this conclusion. First, in *Lester E. Cox Medical Centers*, the Board dismissed the plaintiffs' appeals pursuant to its own procedural rules because the plaintiffs had failed to appear for a hearing. 691 F. Supp. 2d at 165-66. While the plaintiffs claimed that attending the hearing would have been "overly burdensome and futile," a judge of this court found that their justification had no bearing on the Board's authority to apply its own procedural rules to dismiss the case. *Id.* at 168.

Next, the Tenth Circuit reached a similar conclusion in *High Country Home Health, Inc. v. Thompson*, 359 F.3d 1307 (10th Cir. 2004). There, a physical therapy provider appealed to the Board after HHS concluded that the provider had been overcompensated for medical services. *Id.* at 1309. The Board rules required the provider to submit both a preliminary and final position paper. *Id.* Even though failing to do so "would result in dismissal," the provider missed the second deadline.

10

*Id.* The Board subsequently dismissed the appeal and rejected the provider's request to reopen it. *Id.* at 1309-10. In seeking judicial review, the provider argued that the dismissal was "an exercise of 'form over substance'" because the Board could have gleaned the same information by relying on the preliminary position paper and other filings. *Id.* at 1312. The Tenth Circuit rejected this claim, reasoning that the Board was not expected to look elsewhere for the information it sought. *Id.* at 1313. In other words, whether the Board may have already had the information it wanted did not invalidate its procedural requirements.

Finally, in *Rapid City Regional Hospital*, a judge of this court relied on *High Country* to reach the same result. There, the plaintiff submitted a letter explaining the substance of its claims at the same time it filed its appeal. 681 F. Supp. 2d at 59. Even though a preliminary position paper would have largely repeated the substance of the letter, the Board dismissed the appeal after the plaintiff missed the position paper deadline. *Id.* The court held that the Board's dismissal was not arbitrary and capricious, rejecting the plaintiff's assertion that "the requirement to file the preliminary position paper [was] redundant . . . [because] all of the information was already before the Board." *Id.* at 61. It further declined to "look behind the [procedural] rule to determine whether [the rule's] purpose" was already fulfilled in some other way. *Id.*

As in *Lester E. Cox Medical Centers*, *High Country Home Health, Inc.*, and *Rapid City Regional Hospital*, so too, here. The Providers may believe that the Board's asking for a group status update was pointless. But agencies retain broad discretion to enforce their own procedural rules, especially when those rules focus on docket management. True, the Board could have obtained the requested information without any additional action by the Providers. But that does not make the request inherently irrational. And there is no dispute that the Board can enforce its procedural

11

rules by dismissing appeals due to missed deadlines. The Providers therefore cannot show that the Board's dismissals were arbitrary and capricious.

## V.   CONCLUSION

For the foregoing reasons, the court will deny Plaintiffs' Motion for Summary Judgment, ECF Nos. 11, 28, and will grant Defendant's Cross-Motion for Summary Judgment, ECF Nos. 12, 26. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   February 10, 2025